FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 09, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DAVE MOHRING, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>PACIFIC OFFICE AUTOMATION, INC., a foreign profit corporation in the State of Washington, and DOES 1 through 100, inclusive,<br><br>Defendants, | No. 2:26-CV-00353-MKD<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND<br><br>**ECF No. 9** |

Before the Court is Plaintiff's Motion to Remand. ECF No. 9. The Court has reviewed the motion and record and is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion.

**BACKGROUND**

Plaintiff, on behalf of himself and all others similarly situated, initiated this class action suit in Spokane County Superior Court on July 6, 2026. ECF No. 1-1.

Plaintiff alleges Defendant "engaged in wage and hour abuses against its Washington hourly-paid or non-exempt employees," including by:

> (1) failing to provide employees with the rest breaks to which they are entitled; (2) failing to provide employees with the meal breaks to which they are entitled; (3) failing to pay all minimum wages to employees for all hours worked; (4); failing to pay all overtime wages to employees when they worked more than 40 hours in a workweek; (5) failing to accrue sick leave for and failing to allow for the usage of paid sick leave for qualifying absences by employees; (6) making unlawful deductions and rebates from employees' wages.

ECF No. 1-1 at 4-5 ¶ 1.1.

Plaintiff's putative class consists of "[a]ll hourly-paid or non-exempt employees of Defendants in the State of Washington at any time during the period from three years preceding the filing of this Complaint to final disposition of this action." *Id.* at 11 ¶ 6.1. Plaintiff asserts nine Washington statutory claims and seeks compensatory and exemplary damages, attorneys' fees and costs, and pre-judgment and post-judgment interest. *Id.* at 12-23.

On August 17, 2026, Defendant removed this action by invoking the Court's jurisdiction under the Class Action Fairness Act ("CAFA"). ECF No. 1 at 1-15. First, Defendant maintained there were more than 100 employees who met the criteria for the proposed class. *Id.* at 4 ¶ 10. Next, Defendant noted the parties were minimally diverse: Plaintiff is a citizen of Washington and Defendant is incorporated and organized under the laws of Oregon with its principal place of business and headquarters in Beaverton, Oregon. *Id.* at 5 ¶ 13. Third, Defendant

estimated the amount in controversy for the claims alleging meal break, rest break, and overtime violations as exceeding $5,702,442.23, above and beyond CAFA's $5,000,000 floor. *Id.* at 5-12.

In support of its amount in controversy estimate, Defendant calculated estimated damages[1] of $912,390.75 for meal periods; $304,130.25 for rest periods; $1,216,521.00 for double damages on meal and rest break claims; $1,824,781.52 for double damages on unpaid overtime (off the clock); and $304,130.26 for double damages on unpaid overtime (meal breaks). *Id.* at 12. Finally, using a benchmark of 25% of Plaintiff's potential recovery, Defendant estimated attorneys' fees would equal at least $1,140,488.45—bringing the amount in controversy to $5,702,442.23 for just three of the nine claims. *Id.* This calculation does not consider the potential damages and attorneys' fees for the rest of Plaintiff's claims, including his claims for unpaid wages, sick time violations, and unlawful deductions. *Id.*

Plaintiff now seeks remand, disputing only Defendant's amount in controversy calculations. ECF No. 9 at 8.

---

[1] These figures are from the Defendant's removal notice. ECF No. 1. However, in response to Plaintiff's Motion to Remand, Defendant produced updated figures based on more accurate information. ECF No. 10 at 12 n.1.

## LEGAL STANDARD

In general, "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). CAFA permits a defendant to remove a class action to federal court if there is minimal diversity between the parties, if the class contains at least 100 members, and, if the amount in controversy exceeds $5 million. *See* 28 U.S.C. §§ 1332(d), 1453(b).

The defendant's "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. "Evidence establishing the amount is required ... only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* "If the allegation is disputed, then the party seeking removal—and invoking the jurisdiction of the federal courts—bears the burden of demonstrating by a preponderance of the evidence that the amount in controversy exceeds $5 million." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th. Cir. 2025) (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). "The district court's task is simply to determine if the defendant's 'reasoning and underlying

assumptions are reasonable.'" *Id.* (quoting *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022)).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). Furthermore, the amount in controversy is not necessarily what the plaintiff is *likely* to obtain, instead, "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Id.* (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).

**DISCUSSION**

As mentioned above, the parties do not dispute the class size or minimal diversity requirements for CAFA jurisdiction. ECF No. 9 at 8. Plaintiff argues, however, that the $5 million amount in controversy threshold is not met. *Id.* The Court thus determines whether Defendant's assumptions are reasonable considering the allegations in the Complaint. *Perez*, 131 F.4th at 808; *see Ibarra*, 775 F.3d at 1198 (noting courts must consider "real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure"). As discussed below, the Court finds

Defendant has proven, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

**A. Workweek and Shift Figures**

Plaintiff first argues that Defendant's calculations in the Notice of Removal are based on unsupported assumptions regarding the number of shifts at issue. ECF No. 9 at 10-16. The Notice of Removal relied on data submitted in a declaration by Defendant's Human Resources Manager, Amy Cortes. ECF No. 1-3 at 2. However, Plaintiff points out that key figures, such as the number of shifts worked, were not actually supported by the Cortes Declaration. ECF No. 9 at 10.

In its Response to Plaintiff's Motion to Remand, Defendant relied on new figures provided in a declaration by its Payroll Manager, Sheri Orton (the "Orton Declaration"). ECF No. 11. Ms. Orton states there were approximately 296 class members who worked 24,134 workweeks and 108,615 shifts during the class period. *Id.* at 2. Additionally, the average shift length was 8.17 hours, and the average number of overtime hours worked per week per class member was 1.16 hours. *Id.* at 3. Defendant used these updated figures to calculate damages in response to Plaintiff's Motion to Remand. ECF No. 10.

The Court finds Ms. Orton's data constitutes competent evidence for the purposes of calculating the amount in controversy. *E.g.*, *Waldrop v. Basic Am., Inc.*, 2025 WL 3680319, at *3 (E.D. Wash. Dec. 18, 2025) (accepting hour and

wage figures supported by declaration of defendant's general counsel and vice president of human resources); *Perez*, 131 F.4th at 808. The figures provided by Ms. Orton supplied the factual basis that was missing in Defendant's initial amount in controversy calculations. Accordingly, the Court will not remand this action on the basis that Defendant's workweek and shift figures are "unsupported by any evidence," as Plaintiff contends. ECF No. 9 at 10.

**B. 60% Violation Rate for Meal Breaks**

Plaintiff next disputes Defendant's assumption that the meal break violations occurred at a rate of 60% for every class member *i.e.*, that Defendant denied class members their meal break on three of every five shifts worked. *Id.* at 12. The Complaint is silent as to the precise frequency at which Defendant allegedly denied class members their meal breaks, stating that it did so "regularly." ECF No. 1-1 at 9 ¶ 5.6. Plaintiff argues that a rate of 60% is unsupported by the allegations and offers an assumed violation rate of 20% instead. ECF No. 9 at 13.

Plaintiff cites two cases in which courts have upheld assumed violation rates of 20% (one violation per week per class member) based on similar "pattern and practice" or "policy and practice" allegations. ECF No. 9 at 12-13. In both of those cases, however, the defendant was the party that offered the 20% rate and neither court considered whether a higher rate, such as 60%, would have been reasonable. *See Arias*, 936 F.3d at 926; *Arnold v. Marriott Int'l, Inc.*, 2025 WL

1919260, at *3-4 (W.D. Wash. July 11, 2025). Plaintiff argues, "Defendant's 60% figure triples [the 20%] benchmark," but it is not accurate to call the 20% figures in *Arias* and *Arnold* "benchmarks" for assumed violation rates. ECF No. 9 at 13. The court in *Arnold*, held that an assumed 20% was the floor, not the ceiling, when a complaint alleges pattern and practice violations. 2025 WL 1919260, at *3-4. Similarly, the Ninth Circuit in *Arias* held the defendant's one violation per week estimate was reasonable. 936 F.3d at 927.

By contrast, courts in Washington have upheld assumed violation rates close to 60% based upon similar allegations. This Court previously found a defendant's assumed violation rate of 50% was reasonable based on allegations the defendant engaged in a "common course"[2] of violations. *Waldrop*, 2025 WL 3680319. Similarly, a court in the Western District of Washington applied an assumed violation rate of 57% because the complaint alleged the meal break violations occurred as a "common course." *Washington v. Kerry Inc.*, 2025 WL 3089015 at *8 (W.D. Wash. Nov. 5, 2025). The court in *Washington*, noted that an assumed violation rate of 27% "would be far too low, as violation rates in that general area are largely defined as 'at times,' which generally implies the alleged illegal

---

[2] The Court considers the term "common course" to be roughly synonymous with "regular" in this context.

conduct occurred at a 20% violation rate." *Id.* (citing *Young v. Lab'y Corp. of Am.*, 2024 WL 689605, at *9 (W.D. Wash. Feb. 20, 2024)).

Additionally, Defendant cites several cases from district courts in California which upheld assumed violation rates of 60% as reasonable based on the allegations in the complaint. ECF No. 10 at 10. Notably, a court upheld an assumed violation rate of 60% as reasonable based on allegations that the violations occurred "regularly." *Banuelos v. Fleetpride Inc.*, 2026 WL 2168361, at *2 (E.D. Cal. July 28, 2026) ("It is reasonable to assume that an event occurring 'routinely' or 'regularly' in the workplace is one that happens on about three days out of every five.").

"When a plaintiff uses generic phrasing—e.g. 'at times,' 'routinely,' and 'common course'—in describing alleged violation rates, defendants have greater latitude in estimating the amount in controversy." *Aguilar v. Freedomsroads LLC*, 2026 WL 674378, at *2 (E.D. Wash. Mar. 10, 2026). The Court finds that Defendant's assumed meal break violation rate of 60% is reasonable based upon the allegation that Defendant "regularly" denied its employees meal breaks.

Accordingly, the Court accepts Defendant's calculation of $1,544,505.30 after double damages[3] as the amount in controversy for this claim. ECF No. 10 at 12.

**C. Rest Break Violations**

Plaintiff argues Defendant's rest break calculation is inconsistent. ECF No. 9 at 14. The Notice of Removal states an assumed violation rate of one per week but then calculates the amount in controversy at a rate of 60% or three violations per week. ECF No. 1 at 9. Defendant has since clarified that this was an error and it intended to apply the 60% violation rate. ECF No. 10 at 13 n.3. Plaintiff contends the 60% rate is unsupported by the allegations in the complaint, claiming Defendant conceded this point in its Notice of Removal. ECF No. 9 at 15. In the Notice of Removal, Defendant stated: "The Complaint is silent as to how often Defendant allegedly failed to provide rest breaks." ECF No. 1 at 7.

The Court disagrees with both parties' interpretation of Plaintiff's allegation. The Complaint alleges, "Defendants failed to authorize and permit Plaintiff and Class Members to take legally compliant rest breaks and failed to provide

---

[3] RCW 49.52.050 provides for double damages. Plaintiff does not appear to challenge the application of double damages for these claims. *See* ECF No. 10 at 9, 10.

compensation for such missed breaks as required by Washington State wage and hour laws." ECF No. 1-1 at 9 ¶ 5.7. This alleges a categorical denial of rest breaks. Plaintiff included qualifiers when describing the other claims. For example, the Complaint alleged the meal break violations occurred "regularly," and the overtime violations occurred as a "common course." *Id.* at 9, 11. No such qualifying language included with the rest break allegation. *See Id.* at 9. Accordingly, it would be reasonable to assume a violation rate as high as 100%. *See, e.g.*, *Lopez v. First Student, Inc.*, 427 F. Supp.3d 1230, 1236 (C.D. Calif. Dec. 2, 2019) (holding 100% violation rate reasonable where plaintiffs failed to "limit their allegations in any meaningful way"); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (finding 100% violation rate reasonable where, "[p]laintiff included no limitation on the number of violations").

Because a higher violation rate could reasonably be assumed based on the language in the complaint, the Court finds Defendant's assumed violation rate of 60% is reasonable. Therefore, the Court accepts Defendant's calculation of $514,835.10 as the amount in controversy with respect to rest break violations. ECF No. 10 at 13.

**D. Overtime Estimates**

Plaintiff challenges Defendant's amount in controversy with respect to overtime violations. ECF No. 9 at 15. The Complaint alleges "Defendants have

engaged in a common course of failing" to pay the proper overtime rate for time worked in excess of 40 hours per week. ECF No. 1-1 at 11. Defendant initially assumed, based on these allegations, that each class member would have been entitled to one hour of overtime pay per week. ECF No. 1 at 9.

Plaintiff first argued that Defendant's overtime estimates were premised on a baseless assumption: that every employee worked 40 hours in every week of every class period so that every additional minute worked was compensable as overtime. ECF No. 9 at 15. However, as noted above, the Orton Declaration provides the missing factual basis for Defendant's contention, stating: "The average number of overtime hours worked per week per class member during the relevant time period was 1.16 hours." ECF No. 11 at 3.

Because Defendant supplied the missing evidentiary basis for its assumption, Plaintiff abandons this argument. Instead, Plaintiff argues Defendant's calculation for this off-the-clock work should be calculated at the straight-time rate of $23.70 rather than the overtime rate of $35.55. ECF No. 12 at 4-5. Plaintiff contends this is true because average work week was only 36.8 hours, a figure he arrives at by dividing the 108,615 shifts by the 24,134 work weeks which equals 4.5 shifts per week, and 4.5 shifts multiplied by 8.17 hours per shift equals 36.8 hours per week on average. *Id.* Because Washington only

requires overtime pay after 40 hours are worked in a particular week Plaintiff argues the extra hour of work should be counted at the straight rate. *Id.*

Plaintiff's calculation of the average hours worked per week is at odds with Ms. Orton's assertion that each class member worked an average of 1.16 hours of overtime per week. ECF No. 11 at 3. Plaintiff disposes of this discrepancy by claiming that the average of 1.16 hours of overtime per class member per week "alongside a 36.8-hour average week, [] shows that recorded overtime was concentrated in some weeks, not that every week exceeded forty hours." ECF No. 12 at 4.

"'The preponderance standard does not require a district court to perform a detailed mathematical calculation' to determine if a defendant has satisfied its burden." *Aguilar*, 2026 WL 674378 (quoting *Harris v. KM Indus*, 980 F.3d 694, 701 (9th Cir. 2020)). Accordingly, the Court does not assess the accuracy of Plaintiff's statistical analysis and explanation for the discrepancy. The Court cannot square Plaintiff's claim that the average workweek consisted of 36.8 hours with the figures in the Orton Declaration stating the class members work 5-day work weeks with an average shift length of 8.17 hours and an average overtime of 1.16 hours per member per week. ECF No. 11 at 2-3. Logically, not all of these statements can be true. Regardless, Plaintiff's 36.8-hour average workweek

calculation is unsworn testimony appearing for the first time in the Reply and will not be given the same weight as the figures in the Orton Declaration.

Accordingly, the Court accepts Defendant's amount in controversy with respect to the unpaid overtime wages as $1,715,927.40 after double damages. ECF No. 10 at 15.

**E. Rounding**

The Complaint alleges "Defendants' timekeeping system would often round and/or average time entries rather than recording exact hours worked." ECF No. 1-1 at 23 ¶ 5.4. Based on this allegation, Defendant estimated "that each class member was not paid six minutes of time per shift," and calculates the potential damages for these violations to be $514,835.10 after doubling. ECF No. 10 at 19.

Plaintiff contests this, arguing a 100% violation rate is unreasonable because the complaint alleges Defendant would "often" round down. ECF No. 12 at 7. Plaintiff submits that a 60% rate would be consistent with Defendant's other calculations. *Id.* Plaintiff further contends that assigning a value of $0 is proper "[i]f a defendant provided no evidence or clearly inadequate evidence supporting its valuation for a claim." ECF No. 12 (quoting *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022).

Defendant's valuation is supported by inferences drawn from allegations in the Complaint; it merely applies an improper assumed violation rate. Courts may

reduce the assumed violation rate when the defendant's proposed rate is unreasonably high. *See Washington*, 2025 WL 3089015 at *8 (applying 57% violation rate when defendant proposed 100% violation rate for pattern and practice violation allegations); *Jauregui*, 28 F.4th at 992 (holding a district court erred in assigning $0 value to claims just because it disagreed with defendant's calculations). The Court agrees with Plaintiff that the use of the word "often" in the Complaint suggests a timekeeping rounding violation rate of less than 100% and that a rate of 60% is more reasonable. The potential damages at issue for the rounding violations can therefore be calculated at 60% of $514,835.10 which amounts to $308,901.06.

**CONCLUSION**

The Court concludes Defendant's calculations and underlying assumptions regarding meal breaks, rest breaks, and overtime are reasonable. It further concludes that reducing the assumed rounding violation rate from 100% to 60% is warranted based on the allegations in the Complaint. The total potential damages for the meal and rest break violations, overtime violations, and rounding violations—after doubling—are as follows:

| | |
|---|---|
| Meal breaks | $1,544,505.30 |
| Rest breaks | $514,835.10 |
| Overtime | $1,715,927.40 |

| | |
|---|---|
| Rounding | $308,901.06 |
| **Subtotal:** | $4,084,168.86 |
| Attorneys fees (25% of subtotal) | $1,021,042.21 |
| **Grand total** | **$5,105,211.08** |

The total amount in controversy for these claims is $5,105,211.08—over and above the CAFA threshold of $5 million. Because the threshold is met based on damages from these claims alone, it is not necessary to determine the amount in controversy for the remaining claims.

**Accordingly, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Remand, **ECF No. 9**, is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to the parties.

**DATED** November 9, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE